**[NOT YET SCHEDULED FOR ORAL ARGUMENT]**
No. 25-5197

# In the United States Court of Appeals for the District of Columbia Circuit

TRAVIS LEBLANC and EDWARD FELTEN,

*Appellees*,

*v.*

UNITED STATES PRIVACY AND CIVIL LIBERTIES
OVERSIGHT BOARD, et al.,

*Appellants*.

On Appeal from the U.S. District Court
for the District of Columbia, No. 1:25-cv-00542-RBW
(Hon. Reggie B. Walton)

**APPELLEES' PETITION FOR REHEARING EN BANC
AND IMMEDIATE ADMINISTRATIVE STAY**

Caleb Thompson
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th St.
New York, NY 10019
(212) 836-8000
Caleb.Thompson@arnoldporter.com

Elisabeth S. Theodore
Daniel R. Yablon
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
Elisabeth.Theodore@arnoldporter.com
Daniel.Yablon@arnoldporter.com

*Counsel for Appellees Travis LeBlanc and Edward Felten*

# TABLE OF CONTENTS

TABLE OF CONTENTS.........................................................................i

TABLE OF AUTHORITIES ................................................................ ii

GLOSSARY........................................................................................v

INTRODUCTION AND RULE 40(B)(2) STATEMENT ......................1

BACKGROUND ................................................................................4

      A.   Statutory Background .................................................................4

      B.   Factual and Procedural History ................................................6

ARGUMENT ......................................................................................8

I.    The Special Panel's Merits Holding Conflicts with Binding Precedent on an Issue of Exceptional Importance ..........................................8

      A.   The Special Panel's Decision Conflicts with *Severino* and Numerous Supreme Court Decisions ........................................8

      B.   Text, Structure, History, and Function Confirm that Congress Intended to Prohibit Removal of PCLOB Members Without Cause .......10

II.   The Special Panel's Irreparable Harm Holding Conflicts with Binding Precedent on an Issue of Exceptional Importance ...........................14

      A.   The Government Cannot Show an Irreparable Article II Harm From Removal Restrictions That Comport with Article II .....................14

      B.   The Remaining Equitable Factors Strongly Disfavor a Stay .................16

CONCLUSION .................................................................................17

CERTIFICATE OF COMPLIANCE....................................................18

CERTIFICATE OF SERVICE ...........................................................19

ADDENDUM

     Order Granting Motion for Stay Pending Appeal (July, 1 2025)

     Certificate as to Parties, Rulings, and Related Cases

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Collins v. Yellin*,
    594 U.S. 220 (2021)................................................................15

*CREW v. FEC*,
    904 F.3d 1014 (D.C. Cir. 2018)............................................8

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
    601 U.S. 42 (2024)................................................................9

*FEC v. NRA Pol. Victory Fund*,
    6 F.3d 821 (D.C. Cir. 1993)...........................................2, 9, 13

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    537 F.3d 667 (D.C. Cir. 2008)....................................2, 9, 11, 13

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010)................................................................2

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935)........................................................10, 12

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022)..............................................2, 9

*KalshiEX LLC v. CFTC*,
    119 F.4th 58 (D.C. Cir. 2024).............................................14

*Lac du Flambeau Band of Lake Superior Chippewa Indians v.
    Coughlin*,
    599 U.S. 382 (2023)................................................................9

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)................................................................9

*Maine Cmty. Health Options v. United States*,
    590 U.S. 296 (2020)................................................................9

*MFS Sec. Corp. v. SEC*,
  380 F.3d 611 (2d Cir. 2004) ..................................................................13

*Muscogee (Creek) Nation v. Hodel*,
  851 F.2d 1439 (D.C. Cir. 1988) ............................................................11

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
  547 U.S. 47 (2006) ................................................................................11

*Sebelius v. Auburn Reg'l Med. Ctr.*,
  568 U.S. 145 (2013) ................................................................................9

*SEC v. Jarkesy*,
  603 U.S. 109 (2024) ................................................................................2

*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020) ..................................................................11, 12, 15

*Severino v. Biden*,
  71 F.4th 1038 (D.C. Cir. 2023) ...............................................1, 2, 8, 10

*Trump v. Wilcox*,
  145 S. Ct. 1415 (2025) ...........................................................3, 14, 15, 17

*Wiener v. United States*,
  357 U.S. 349 (1958) .............................................................................2, 9

**Statutes**

15 U.S.C. § 78d(a) ......................................................................................13

42 U.S.C.
  § 2000ee ..................................................................................................5
  § 2000ee(a) ...........................................................................................11
  § 2000ee(b) ...........................................................................................14
  § 2000ee(d)(4) .......................................................................................13
  § 2000ee(g)(1) .......................................................................................15
  § 2000ee(g)(2) .......................................................................................15
  § 2000ee(h) ...........................................................................................12
  § 2000ee(h)(2) .......................................................................................12
  § 2000ee(h)(4) ..................................................................................11, 12

9/11 Commission Act § 801(a), Pub. L. 110-53, 121 Stat. 266 ...........5, 11

Intelligence Reform and Terrorism Prevention Act of 2004
§ 1061(a)(2), Pub. L. 108-458, 118 Stat. 3638 ....................................................4

IRTPA
§ 1061(b) ................................................................................................................4
§ 1061(c)(1) ............................................................................................................4
§ 1061(e) .................................................................................................................4
§ 1061(e)(1)(E) .......................................................................................................4
§ 1061(k) ...........................................................................................................4, 11

## Other Authorities

Fed. R. App. P. 40(2)(D) ........................................................................................2

Stay Mot., *Dellinger v. Bessent*, No. 25-5052 (D.C. Cir. Mar. 3, 2025) ................16

Stay Mot., *Harris v, Bessent*, No. 25-5055 (D.C. Cir. Mar. 6, 2025) .....................15

Stay Mot., *Wilcox v. Trump*, No. 25-5057 (D.C. Cir. Mar. 10, 2025) ....................15

# GLOSSARY

| | |
|---|---|
| FEC | Federal Election Commission |
| FTC | Federal Trade Commission |
| IRTPA | Intelligence Reform and Terrorism Prevention Act of 2004 |
| PCLOB | Privacy and Civil Liberties Oversight Board |
| SEC | Securities & Exchange Commission |

## INTRODUCTION AND RULE 40(B)(2) STATEMENT

Defying this Court's unambiguous precedent, a special panel stayed a final judgment reinstating plaintiffs-appellees to their positions as members of the Privacy and Civil Liberties Oversight Board (the PCLOB) on the ground that Congress may protect members of multimember expert agencies from removal at will only if it uses specific language referencing for-cause removal. That is so, under the special panel's holding, even where Congress's intent is otherwise clear. The special panel thus held that Congress's decision to amend the PCLOB's organic statute in 2007 to *delete* an at-will removal provision was irrelevant and ineffective.

The special panel's magic-words requirement flatly contradicts this Court's holding in *Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023), and numerous Supreme Court decisions. And it imperils removal protections for other federal officers, like Commissioners of the Securities and Exchange Commission, whom this Court has held and the Supreme Court has long assumed Congress meant to insulate from presidential whim. Even worse, the special panel announced this novel rule, and found irreparable harm to the President's Article II authority, in a case where the government has *never* argued that the PCLOB exercises substantial executive power or that removal restrictions for its members would contravene Article II.

The special panel's decision warrants en banc review. First, it conflicts with this Court's decision in *Severino*, which held that Congress may clearly indicate its

intent to restrict removals in "two ways": (1) "in the plain text of a statute"; or (2) "through the statutory structure and function of an office." 71 F.4th at 1044. In adopting a bright-line rule that only express removal protections will do, the special panel reduced the first of these avenues to a magic-words requirement and read the second out of Circuit precedent altogether. That approach flouts not only *Severino*, but also numerous decisions finding or assuming implied removal protections for federal officers. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 537 F.3d 667, 669, 680 (D.C. Cir. 2008), *aff'd in part*, 561 U.S. 477, 487 (2010); *Wiener v. United States*, 357 U.S. 349, 353 (1958); *FEC v. NRA Pol. Victory Fund*, 6 F.3d 821, 826 (D.C. Cir. 1993); *Jarkesy v. SEC*, 34 F.4th 446, 464 (5th Cir. 2022), *aff'd*, 603 U.S. 109 (2024). In light of its cross-cutting significance for a host of federal officers long assumed to enjoy removal protections, the special panel's decision presents a question of exceptional importance. *See* Fed. R. App. P. 40(2)(D).

Second, the special panel's conclusion that the President suffered irreparable Article II harm from the continued service of PCLOB members who wield no executive power also conflicts with binding precedent. PCLOB provides informational reports that assist Congress; as the district court held, it exercises no "executive power," sets no policy, and binds no one. ECF 30 ("Stay Op.") at 4-6. The Supreme Court recently explained that the government faces harm "from an order allowing a removed officer *to continue exercising the executive power*."

2

*Trump v. Wilcox*, 145 S. Ct. 1415 (2025) (emphasis added). The special panel *did not* conclude that PCLOB members exercise any executive power—yet it still found irreparable harm. Nor did the panel explain how the President could demonstrate irreparable injury on the basis of intrusion into his Article II powers when the President has repeatedly and intentionally declined to argue on the merits that removal restrictions for PCLOB members violate Article II. *Wilcox* left Supreme Court precedent where it found it—Article II permits Congress to restrict removal authority in the context of agencies that exercise no "considerable executive power." *Id.* at 1415. This Court should not countenance a stay holding the opposite, turning *Wilcox* into a decision allowing the President to fire anyone at will, and eliminating what is left of *Humphrey's Executor* before the Supreme Court takes that step.

Although the PCLOB exercises no executive power, it plays a critical and time-sensitive role in enabling Congress's constitutional oversight duties. In less than a year, Congress will decide whether to reauthorize the government's most powerful warrantless surveillance authority. Members from both parties have repeatedly relied on the PCLOB's reports to understand how the executive is applying Section 702 and whether and under what conditions to reauthorize it. The special panel's stay, if left in place, will deprive Congress of the information it needs to legislate on behalf of the American public.

The Court should grant rehearing en banc and vacate the special panel's order. Given that plaintiffs-appellees have been back at work for over a month since the district court entered final judgment, an immediate administrative stay is appropriate to preserve the status quo while the full Court considers this petition.

## BACKGROUND

### A.    Statutory Background

Congress created the PCLOB in 2004 to ensure "checks and balances" on the expansive new national security authorities the Executive Branch received following September 11. *See* Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA) § 1061(a)(2), Pub. L. 108-458, 118 Stat. 3638. As originally constituted, the Board was housed in the Executive Office of the President and subject to the President's direct control. *Id.* § 1061(b). The statute provided that "[t]he Board shall perform its functions within the executive branch and under the general supervision of the President." *Id.* § 1061(k). The Board's "advice" function was cabined to "the purpose of providing advice to the President" and the "executive branch." *Id.* § 1061(c)(1). The President appointed the majority of the Board without Senate participation, *id.* § 1061(e), and there was no requirement of partisan balance. And the statute expressly authorized at-will removal of Board members, who "shall each serve at the pleasure of the President." *Id.* § 1061(e)(1)(E).

Concerned that presidential interference had resulted in serious omissions

from the PCLOB's inaugural report, Congress reconstituted the PCLOB as an independent agency.    District Court Op. ("D.Ct.Op.") 6-8; *see* Implementing Recommendations of the 9/11 Commission Act ("9/11 Commission Act") § 801(a), Pub. L. 110-53, 121 Stat. 266 (codified as amended at 42 U.S.C. § 2000ee)). Congress (i) excised language stating that members "serve at the pleasure of the President" and "under the general supervision of the President"; (ii) removed the Board from the Executive Office of the President and added language designating it as "independent"; (iii) required Senate confirmation for all members and imposed new requirements that members serve staggered terms and be politically balanced, precisely mirroring the structure of existing multi-member commissions understood to have removal protection; (iv) directed the Board to continually "review" the executive branch's approach to protecting privacy and civil liberties; (v) removed language cabining the Board's advice function to the "President"; (vi) mandated that members "shall serve" for 6 years; and (vii) mandated that the Board send semi-annual reports to Congress describing the results of its advice and oversight, including "minority" views. *See id.*; D.Ct.Op.8-11; ECF 18-1 (statutory redline).

The Board's independent status has allowed it to issue a series of reports over the last decade, often at Congress's specific request, addressing individual government surveillance programs.    D.Ct.Op.33-37.    Many of these reports have identified civil liberties concerns, have been "weighed … heavily" by Congress, and

have led to important reforms. *Id.* The Board also plays a unique, critical function informing the public and courts about how government surveillance programs operate. D.Ct.Op.10 n.10. The Board is currently working on, among other things, issuing a report on the controversial warrantless wiretapping program authorized by Section 702 of the Foreign Intelligence Surveillance Act ahead of the deadline for Congress to re-authorize or amend that program in April 2026. D.Ct.Op.15, 62.

## B.    Factual and Procedural History

On January 27, 2025, the President purported to terminate without cause the Board's three Democratic members, leaving the sole Republican member in place and depriving the Board of a quorum. D.Ct.Op.13-15. Two members (plaintiffs-appellees here) sued, seeking reinstatement. The government contended that the statute did not clearly restrict the President's removal authority, and raised the constitutional avoidance canon, but intentionally waived any argument that removal protections in this context would violate the Constitution. ECF 18 at 15. The district court (Walton, J.) granted summary judgment on May 21, holding that the "statutory text as a whole," as well as the PCLOB's "structure" and "function," "clearly indicate that Congress intended to" protect Board members from at-will removal. D.Ct.Op.2, 24, 38; ECF 25. Plaintiffs-appellees resumed their work on the Board.

One week later, the government moved for a stay pending appeal, which the district court denied. ECF 30 ("Stay Op."). Because the PCLOB exercises no

6

executive power, the court found, the government would suffer no irreparable harm. Stay Op.5-6. And the balance of the equities cut against a stay given the "substantial public interest in the effective oversight of the government's counterterrorism actions and authorities," including issuance of a report on Section 702 before Congress's re-authorization deadline. D.Ct.Op.61-62, 65; Stay Op.6.

The government then sought a stay in this Court, again failing to argue that the district court's interpretation violated Article II. Stay Mot. 7-20 (May 30, 2025); Stay Opp. 18-19 (June 6, 2025); *see also* Appellants' Statement of Issues (June 30, 2025) (raising no constitutional issue).

More than a month after the district court had entered final judgment, the special panel granted a stay. It declined to engage with any of the grounds on which the district court had found that the "statutory text as a whole" reflected Congress's unambiguous intent to protect Board members from removal at will. D.Ct.Op.24; *see* Order 1-2. Instead, it held that, because the "PCLOB's organic statute contains no language restricting the President's removal power" explicitly, Board members must serve at the President's pleasure. Order 2. Purporting to distinguish *Severino*, the special panel then adopted the novel reading that *Severino*'s holding applies only to officials who exercise "adjudicatory functions," even though *Severino* itself involved an agency with no adjudicatory responsibilities. Order 2. Finally, the panel held that reinstatement would "interfere with [the President's] constitutional power"

7

and that the remaining equitable factors favored a stay.  Order 2-3.

## ARGUMENT

In two ways, the special panel's decision conflicts with controlling precedent on questions of exceptional importance.  First, its merits holding that only magic words can protect non-adjudicatory officers from removal at will conflicts with *Severino* and numerous Supreme Court decisions.  Second, its conclusion that the President suffers irreparable Article II injury from enforcing removal restrictions that concededly pose no Article II problem conflicts with the Supreme Court's recent decision in *Wilcox*, transforming the "stringent" stay requirements, *CREW v. FEC*, 904 F.3d 1014, 1016-17 (D.C. Cir. 2018), into a per se rule that the government always wins in removal cases.  Each of these holdings warrants en banc review and vacatur, and an immediate administrative stay is appropriate to allow plaintiffs-appellees to continue the PCLOB's important work as they have since the district court entered final judgment.

## I.    The Special Panel's Merits Holding Conflicts with Binding Precedent on an Issue of Exceptional Importance

### A.    The Special Panel's Decision Conflicts with *Severino* and Numerous Supreme Court Decisions

In *Severino*, this Court held that Congress may clearly indicate its intent to restrict a federal officer's removal in one of "two ways": (1) "in the plain text of a statute"; or (2) "through the statutory structure and function of an office."  71 F.4th

at 1044.  That precedent comports with the Supreme Court's repeated admonition that courts construing statutes must employ all of the "traditional tools of statutory construction," *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 401 (2024), and rejecting the need for Congress to "incant magic words in order to speak clearly," even when strong textual presumptions are at issue, *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013).[1]  *Severino* also follows numerous decisions finding or assuming removal protections for federal officers absent express language restricting removal at will.  *See, e.g.*, *Free Enter. Fund*, 537 F.3d at 669, 680; *Free Enter. Fund*, 561 U.S. at 487; *Wiener*, 357 U.S. at 353*; FEC*, 6 F.3d at 826; *Jarkesy*, 34 F.4th at 464.

The special panel's contrary holding directly contravenes this precedent, calling into question removal restrictions for federal officers that this Court and the Supreme Court have long assumed.  Holding that only an express for-cause removal restriction will protect officials who do not exercise "adjudicatory functions," Order 2, the special panel superseded *Severino*'s holistic framework with a magic-words requirement entirely novel in the law.  And its perfunctory effort to distinguish *Severino* is impossible to square with that decision.  *Severino* announced a uniform

---

[1] *See, e.g.*, *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024) (waiver of federal sovereign immunity); *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 388 (2023) (abrogation of state sovereign immunity); *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 323 n.12 (2020) (creation of private damages remedy).

standard for determining whether Congress has made "clear in a statute if it wishes to restrict the President's removal power." 71 F.4th at 1044. *Severino* applied that standard to an agency—the Administrative Conference of the United States—that performed no adjudicatory functions. *See Severino*, 71 F.4th at 1048-49. It did so in reliance on the Supreme Court's holding in *Humphrey's Executor v. United States*, 295 U.S. 602, 628-29 (1935), that Congress's decision to "assign[] to an agency quasi-judicial *or quasi-legislative functions* that are deemed to be operationally incompatible with at-will Presidential removal" is a sufficiently clear "signal that Congress meant for members of that agency to be shielded from Presidential removal, even without an explicit textual statement to that effect." *Severino*, 71 F.4th at 1047 (emphasis added). *Severino* would have been one sentence long if its test applied only to adjudicatory agencies.

### B.    Text, Structure, History, and Function Confirm that Congress Intended to Prohibit Removal of PCLOB Members Without Cause

The panel notably did not dispute that, if the *Severino* test applied, it is satisfied in this case. The traditional tools of statutory interpretation—including the "text as a whole," "structure," and "function"—unmistakably demonstrate Congress's intent to prohibit removal at will. Dist.Ct.Op.24, 38.

1. In 2007, Congress substantially amended the Board's organic statute in response to presidential interference in the Board's oversight functions. Those amendments, taken as a whole, unambiguously confer removal protection.

10

First, Congress deleted the prior statute's "serve at the pleasure of the President" language, a change that is irreconcilable with at-will removal. 9/11 Commission Act, § 801(a), 121 Stat. at 352, 355-56; 42 U.S.C. § 2000ee(a), (h)(4); *see* ECF 18-1 (2007 redline). The Supreme Court has repeatedly held that courts must "give effect" to statutory revisions when interpreting statutory text, and may not adopt an interpretation that renders a "legislative change" a nullity. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 57-58 (2006) (refusing to interpret statute "in a way that negates its recent revision"); *see also Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439, 1444 (D.C. Cir. 1988). Ignoring this statutory history, the special panel read the words Congress deleted right back into the statute, holding that Board members continue to serve at the President's pleasure.

Second, Congress's deletion of the old statute's "Presidential Responsibility" section—requiring the Board to work "under the general supervision of the President," IRTPA § 1061(k)—is likewise incompatible with retaining at-will removal. The Supreme Court held in *Seila Law* and *Free Enterprise Fund* that at-will removal power means an agency *is* subject to presidential supervision: the "most direct method of presidential control" is "removal at will." *Seila Law LLC v. CFPB*, 591 U.S. 197, 225 (2020); *see id. at* 204 (referencing "[t]he President's power to remove—and thus supervise—those who wield executive power on his behalf"); *Free Enter. Fund*, 561 U.S. at 499 (similar).

11

2. The PCLOB's structure—a five-member, nonpartisan expert board whose members serve staggered six-year terms—confirms that Congress intended to confer removal protections. D.Ct.Op.32-33; *see* 42 U.S.C. § 2000ee(h); *see also* 9/11 Commission Act § 801(c)(2)(B) (statutory staggering provision). PCLOB "is clearly 'patterned on the classic' multimember expert board at issue in *Humphrey's Executor*," D.Ct.Op.32, exhibiting all the "organizational features" the Supreme Court identified in *Seila Law* as supporting removal restrictions. 591 U.S. at 216. "And the [Board members'] staggered, [six]-year terms enable[] the agency to accumulate technical expertise and avoid a 'complete change' in leadership 'at any one time.'" *Id.* That stability would be impossible under at-will removal.

Further, Board members must be selected "solely" based on expertise, "without regard to political affiliation," except that no more than 3 members of the Board may "be members of the same political party." 42 U.S.C. § 2000ee(h)(2); *see Humphrey's*, 295 U.S. at 620. Those appointment criteria are fundamentally incompatible with at-will removal: if the President cannot select Board members based on political affiliation, Congress could not have intended to allow him to fire them on that basis.

In 2007, Congress had every reason to believe that the PCLOB's structure would suffice to confer for-cause removal protection, even absent an explicit reference to removal. Just like PCLOB members "shall serve a term of six years,"

42 U.S.C. § 2000ee(h)(4), SEC commissioners "shall hold office for a term of five years," 15 U.S.C. § 78d(a), and the SEC is likewise a 5-member expert commission with a partisan balance requirement, *id.*  It was "commonly understood" as of 2007 that the SEC statute barred removal without cause, *MFS Sec. Corp. v. SEC*, 380 F.3d 611, 619 (2d Cir. 2004)—and still is.  The United States has taken that position, *Free Enter. Fund*, 561 U.S. at 487, the Supreme Court has assumed as much, *id.*, and this Court has so held.  *See Free Enter. Fund*, 537 F.3d at 669, 680 (President can remove SEC commissioners "for cause"), *aff'd in part and rev'd in part*, 561 U.S. 477.  Likewise, the FEC has a materially identical structure, and this Court has long assumed that FEC commissioners enjoy for-cause removal protection.  *FEC*, 6 F.3d at 826.

Third**,** the PCLOB's key constitutionally-mandated function—assisting Congress by providing oversight of the executive branch—is "operationally incompatible with at-will Presidential removal."  Dist.Ct.Op.37 (quoting *Severino*, 71 F.4th at 1047).  The PCLOB has produced a series of groundbreaking reports and recommendations on complex executive branch surveillance programs that Congress has relied on in enacting legislative reforms, and PCLOB members have repeatedly testified before Congress pursuant to a specific statutory requirement added in 2007.  Dist.Ct.Op.33-34; 42 U.S.C. § 2000ee(d)(4); *see also* https://www.pclob.gov/Oversight.  Oversight is the Board's function "first and

foremost." Op.33. As in *Humphrey's Executor*, the Board cannot function as a "legislative aid" if the President can fire any Board member who intends to advise Congress of privacy and civil liberties concerns. Permitting the President to do so directly thwarts the balance Congress struck in conferring expansive "additional powers" on the Executive to conduct the war on terrorism while creating an independent oversight body to provide "checks and balances." 42 U.S.C. § 2000ee(b).

## II.  The Special Panel's Irreparable Harm Holding Conflicts with Binding Precedent on an Issue of Exceptional Importance

### A.  The Government Cannot Show an Irreparable Article II Harm From Removal Restrictions That Comport with Article II

The special panel's holding on irreparable harm also contravenes binding precedent. "[A] showing of irreparable harm is a necessary prerequisite for a stay." *KalshiEX LLC v. CFTC*, 119 F.4th 58, 64 (D.C. Cir. 2024). Dispensing with that requirement for removal cases in all but name, the special panel held that the President suffers an irreparable injury to "his constitutional power to supervise the Executive Branch," Order 2, even where—as here—removed officers do not "exercise [executive] power on his behalf," *Wilcox*, 145 S. Ct. at 1415.

In full merits briefing before the district court and two stay applications, the government has never contended that the PCLOB wields "considerable executive power." *Id.* It has repeatedly declined to argue that restricting the President's ability

14

to remove PCLOB members violates Article II.  And as the district court correctly determined, the PCLOB wields no executive power whatsoever.  Op.46.  It conducts no "enforcement."  *Collins v. Yellin,* 594 U.S. 220, 230 (2021).  It issues no "binding rules."  *Seila Law*, 591 U.S. at 218.  It "adjudicat[es]" no disputes.  *Id.* at 219.  It cannot issue compulsory process.  42 U.S.C. § 2000ee(g)(1)-(2).  The advice it offers binds no one.  Its principal role is conducting oversight for Congress; it does not execute the law on the President's behalf.

Absent any claimed infringement of the President's Article II authority, the government cannot demonstrate the only type of irreparable harm the Supreme Court has recognized in removal cases: "allowing a removed officer to continue exercising the executive power."  *Wilcox*, 145 S. Ct. 1415.  The special panel made no finding that PCLOB members exercise executive power.  Nor did the special panel suggest the government might suffer irreparable harm from any action that the PCLOB might take.  In *Harris*, *Wilcox*, and *Dellinger*, the government pointed to sweeping actions taken by removed officials that thwarted the President's policies.  "Member Harris exercised her power unilaterally to stay the termination of thousands of probationary employees."  Stay Mot. 22, *Harris v, Bessent*, No. 25-5055 (D.C. Cir. Mar. 6, 2025).  Member Wilcox was likely to "serve as the decisive, tie-breaking vote" on a board that "promulgate[s] rules" and "has robust enforcement authority."  Stay Mot. 10, 22, *Wilcox v. Trump*, No. 25-5057 (D.C. Cir. Mar. 10, 2025) (quotation marks

15

omitted). And Special Counsel Dellinger "sought a stay of removals of probationary employees." Stay Mot. 18, *Dellinger v. Bessent*, No. 25-5052 (D.C. Cir. Mar. 3, 2025). Here, there is simply no meaningful possibility plaintiffs-appellees will do *anything* during this appeal that interferes with the President's constitutional powers.

The special panel held that the President suffered *per se* irreparable constitutional harm from being forced to "work with" PCLOB members, Order 2, even though—unlike in *Wilcox*—the President has intentionally declined to argue that forcing him to work with PCLOB members offends the Constitution. At bottom, the special panel's holding amounts to a rule that the government need not show irreparable harm to obtain extraordinary relief in removal cases, even after final judgment. That result is flatly inconsistent with the well-established rules governing stays pending appeal and the Supreme Court's decision in *Wilcox*.

### B.    The Remaining Equitable Factors Strongly Disfavor a Stay

For similar reasons, the balance of equities decisively favors permitting plaintiffs-appellees to continue performing their statutory duties, as they have done since the district court entered final judgment. As the district court correctly determined—and the special panel did not dispute—"the PCLOB's statutory obligations are significantly impeded by the loss of a quorum due to the plaintiffs' challenged removals." D.Ct.Op.65. That is particularly true given the Board's time-sensitive work preparing a report on the Section 702 surveillance authority before

16

the statutory reauthorization deadline.  Moreover, one plaintiff-appellee's term will expire in January 2026, so a stay could deprive him of any effective relief.

In concluding otherwise, the special panel collapsed the stringent requirements for interim relief with the merits, asserting that "the public interest is harmed when an injunction wrongly insulates the President's Executive Branch appointees from his oversight."  Order 3.  For the reasons discussed above, the district court's final judgment did not "wrongly" do so.  Moreover, plaintiffs-appellees have now been back at work at the Board for more than a month.  Thus, it is only the special panel's decision that risks "the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation." *Wilcox*, 145 S. Ct. at 1415.

## CONCLUSION

The Court should enter an immediate administrative stay, grant rehearing en banc, and vacate the special panel's decision.

Dated: July 2, 2025

Respectfully submitted,

*/s/ Elisabeth S. Theodore*

Caleb Thompson
ARNOLD & PORTER
  KAYE SCHOLER LLP
250 West 55th St.
New York, NY 10019
(212) 836-8000
Caleb.Thompson@arnoldporter.com

Elisabeth S. Theodore
Daniel R. Yablon
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
Elisabeth.Theodore@arnoldporter.com
Daniel.Yablon@arnoldporter.com

17

**CERTIFICATE OF COMPLIANCE**

I certify, pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Circuit Rule 40(d), that the foregoing petition contains 3,897 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). I further certify that the document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Times New Roman font.

Dated: July 2, 2025                    Respectfully submitted,

                                       */s/ Elisabeth S. Theodore*
                                       Elisabeth S. Theodore

                                       *Counsel for Appellees Travis LeBlanc*
                                       *and Edward Felten*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, I caused the foregoing document to be electronically filed using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Respectfully submitted,

*/s/ Elisabeth S. Theodore*
Elisabeth S. Theodore

*Counsel for Appellees Travis LeBlanc*
*and Edward Felten*

19

**ADDENDUM**

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 25-5197**                                    **September Term, 2024**

**1:25-cv-00542-RBW**

**Filed On: July 1, 2025**

Travis LeBlanc and Edward Felten,

      Appellees

   v.

United States Privacy and Civil Liberties
Oversight Board, et al.,

      Appellants


**BEFORE:**    Katsas, Rao, and Walker, Circuit Judges

# O R D E R

Upon consideration of the motion for a stay pending appeal and an administrative stay, the opposition thereto, the reply, the Rule 28(j) letter, and the response thereto, it is

**ORDERED** that the motion for a stay pending appeal be granted and that the district court's order entered on May 21, 2025, be stayed pending further order of the court.  Appellants have satisfied the stringent requirements for a stay pending appeal. See Nken v. Holder, 556 U.S. 418, 434 (2009); D.C. Circuit Handbook of Practice and Internal Procedures 33 (2024).

This appeal presents the question whether Congress has restricted the President's power to remove members of the Privacy and Civil Liberties Oversight Board (PCLOB).  The President removed PCLOB members Travis LeBlanc and Edward Felten.  The district court held that the removals were unlawful.  LeBlanc v. U.S. Priv. & C.L. Oversight Bd., No. 25-cv-542, 2025 WL 1454010 (D.D.C. May 21, 2025).  The government appealed and moved for a stay.  Because it has met its burden under Nken, 556 U.S. at 426, we grant the stay.

Likelihood of Success on the Merits.  The PCLOB is in the Executive Branch, 42 U.S.C. § 2000ee(a), and the President appoints its members with the Senate's advice and consent, id. § 2000ee(h)(1).  Because PCLOB members report to nobody except the President, they are principal officers of the United States.  See Edmond v. United

States, 520 U.S. 651, 662-63 (1997). Generally, such appointees must serve at the President's pleasure. Trump v. United States, 603 U.S. 593, 608-09 (2024); Myers v. United States, 272 U.S. 52, 162 (1926). The Supreme Court has recognized a narrow exception for certain officers who serve on "multimember expert agencies that do not wield substantial executive power." Seila L. LLC v. CFPB, 591 U.S. 197, 218 (2020); see Humphrey's Ex'r v. United States, 295 U.S. 602, 628 (1935). But a statute "must use 'very clear and explicit language'" to restrict the President's removal power. Kennedy v. Braidwood Management, Inc., 606 U.S. ___, ___ (June 27, 2025) (slip op. at 19) (quoting Shurtleff v. United States, 189 U.S. 311, 315 (1903)) ("mere inference or implication does not suffice" (cleaned up)); see Severino v. Biden, 71 F.4th 1038, 1044 (D.C. Cir. 2023) ("Congress must make it clear in a statute if it wishes to restrict the President's removal power."). PCLOB's organic statute contains no language restricting the President's removal power.

Nor does the statutory scheme support inferring such a restriction. The Supreme Court occasionally has "read a removal restriction into" the governing statute, but only for officials serving on an "adjudicatory body" with "a unique need for 'absolute freedom from Executive interference.'" Collins v. Yellen, 594 U.S. 220, 250 n.18 (2021) (quoting Wiener v. United States, 357 U.S. 349, 353 (1958)); see Wiener, 357 U.S. at 353-56 (members of the War Claims Commission, a non-Article III court). Where the officials at issue do not have such adjudicatory functions, they enjoy no implied removal protection. See Severino, 71 F.4th at 1049 (members of Administrative Conference of the United States); Collins, 594 U.S. at 247-50, 250 n.18 (Acting Director of the Federal Housing Finance Agency) ("The FHFA is not an adjudicatory body, so Shurtleff, not Weiner, is the more applicable precedent."); Shurtleff, 189 U.S. at 315-19 (general appraisers of merchandise); Parsons v. United States, 167 U.S. 324, 327-28, 338-39 (1897) (United States Attorneys). The PCLOB does not adjudicate cases. Its function is to analyze executive-branch actions and to advise the President and Congress. 42 U.S.C. § 2000ee(c)-(f). Because PCLOB is not an adjudicatory tribunal, its members do not have implied protection from at-will removal by the President.

Irreparable Injury Absent a Stay. Injunctions that require the President to work with removed principal officers interfere with his constitutional power to supervise the Executive Branch. Such interference is "obviously disruptive" and inflicts irreparable injury. Sampson v. Murray, 415 U.S. 61, 83 (1974); Dellinger v. Bessent, No. 25-5052, 2025 WL 887518, at *3 (D.C. Cir. Mar. 10, 2025) (per curiam). So in Trump v. Wilcox, 145 S. Ct. 1415 (2025) (per curiam), the Supreme Court stayed preliminary injunctions effectively reinstating removed members of the National Labor Relations Board and the Merit Systems Protection Board to "avoid the disruptive effect of the repeated removal and reinstatement of officers" while litigation is ongoing. Id. at 1415.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

## No. 25-5197                                 September Term, 2024

Harm to Others.  Granting the stays in Wilcox, the Supreme Court concluded that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."  145 S. Ct. at 1415.  We can discern no reason why this balance would be different in the case of removed PCLOB members than it is in cases of removed NLRB or MSPB members.

Public Interest.  The public interest is harmed when an injunction wrongfully insulates the President's Executive Branch appointees from his oversight.  Such injunctions sever a key constitutional link between the People and their elected President.  See Seila L. LLC v. CFPB, 591 U.S. 197, 224 (2020).  LeBlanc and Felten counter that their removals would deprive PCLOB of a quorum, preventing the agency from performing its statutory duties.  But the Supreme Court, when pressed with similar arguments in Wilcox, nonetheless stayed orders restoring the removed officers.  Cathy A. Harris's Opp'n to Appl. for a Stay at 36-37, Wilcox, No. 24A966, 145 S. Ct. 1415 (Apr. 15, 2025); Resp. of Gwynne A. Wilcox in Opp'n to the Appl. for a Stay at 26-27, No. 24A966, Wilcox, 145 S. Ct. 1415 (Apr. 15, 2025).  We do the same here.

### Per Curiam

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:     /s/
Scott H. Atchue
Deputy Clerk

3

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| |
|---|
| Travis LeBlanc and Edward Felten, |
| *Appellees*, |
| v. |
| United States Privacy and Civil Liberties Oversight Board, *et al.*, |
| *Appellants*. |

Case No. 25-5197

**CERTIFICATE AS TO PARTIES, RULINGS,**
**AND RELATED CASES**

**A. Parties and *Amici***

<u>Defendants-Appellants</u>: The United States Privacy and Civil Liberties Oversight Board; Beth A. Williams, in her official capacity as a Board Member of the United States Privacy and Civil Liberties Oversight Board; Jenny Fitzpatrick, in her official capacity as Executive Director of the United States Privacy and Civil Liberties Oversight Board; Trent Morse, in his official capacity as Deputy Director of Presidential Personnel; and Donald J. Trump, in his official capacity as President of the United States of America.

<u>Plaintiffs-Appellees</u>: Travis LeBlanc; Edward Felten.

<u>Amici</u>: The following participated as amici curiae in the district court: the State of Alabama, State of Alaska, Arizona Legislature, State of Florida, State of

1

Georgia, State of Idaho, State of Indiana, State of Iowa, State of Kansas, State of Louisiana, State of Mississippi, State of Missouri, State of Montana, State of Nebraska, State of North Dakota, State of Oklahoma, State of South Carolina, State of South Dakota, State of Tennessee, State of Texas, and State of West Virginia.

### B. Rulings Under Review

The ruling under review is the opinion and final judgment issued by the Honorable Reggie B. Walton, United States District Court for the District of Columbia on May 21, 2025 in Case No. 25-cv-542 (ECF Nos. 24 and 25).

### C. Related Cases

This case has not previously been before this Court. Appellees are not aware of any related cases under Circuit Rule 28(a)(1)(C).

Dated: July 2, 2025                          Respectfully submitted,

                                             /s/ Elisabeth S. Theodore
Caleb Thompson                               Elisabeth S. Theodore
ARNOLD & PORTER                              Daniel R. Yablon
 KAYE SCHOLER LLP                            ARNOLD & PORTER
250 West 55th St.                             KAYE SCHOLER LLP
New York, NY 10019                           601 Massachusetts Ave., NW
(212) 836-8000                               Washington, DC 20001
Caleb.Thompson@arnoldporter.com              (202) 942-5000
                                             Elisabeth.Theodore@arnoldporter.com
                                             Daniel.Yablon@arnoldporter.com

*Counsel for Appellees Travis LeBlanc and Edward Felten*

2