**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 25-5197**

**IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

TRAVIS LEBLANC; EDWARD FELTEN,

Plaintiffs-Appellees,

v.

U.S. PRIVACY AND CIVIL LIBERTIES OVERSIGHT BOARD, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia

# SUPPLEMENTAL RESPONSE BRIEF FOR APPELLANTS

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
ADAM C. JED
*Attorneys, Appellate Staff*
*Civil Division, Room 7243*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-8280*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A. Parties and Amici

Plaintiffs-appellees are Travis LeBlanc and Edward Felten.

Defendants-appellants are the United States Privacy and Civil Liberties Oversight Board; Beth A. Williams, in her official capacity as a Board Member of the United States Privacy and Civil Liberties Oversight Board; Jenny Fitzpatrick, in her official capacity as Executive Director of the United States Privacy and Civil Liberties Oversight Board; Trent Morse, in his official capacity as Deputy Director of Presidential Personnel; and Donald J. Trump, in his official capacity as President of the United States of America.

The following participated as amici curiae in district court: the State of Alabama, State of Alaska, Arizona Legislature, State of Florida, State of Georgia, State of Idaho, State of Indiana, State of Iowa, State of Kansas, State of Louisiana, State of Mississippi, State of Missouri, State of Montana, State of Nebraska, State of North Dakota, State of Oklahoma, State of South Carolina, State of South Dakota, State of Tennessee, State of Texas, and State of West Virginia.

The following participated as amici curiae in this Court: the Arizona Legislature; Sen. Ron Wyden; Sen. Richard Blumenthal; Sen. Cory A. Booker; Sen.

Martin Heinrich; Sen. Mazie K. Hirono; Sen. Edward J. Markey; Sen. Elizabeth Warren; Rep. Sara Jacobs; Rep. Pramila Jayapal; Rep. Ted Lieu; Rep. Zoe Lofgren; the States of Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Montana, North Dakota, Ohio, Oklahoma South Carolina, South Dakota, Tennessee, Texas, Utah, and West Virginia; and Peter Swire.

**B. Rulings Under Review**

Defendants-appellants are appealing from the May 21, 2025, final judgment and permanent injunction issued by the Honorable Reggie B. Walton, United States District Court for the District of Columbia, in Case No. 25-cv-542, Dkt. Nos. 24, 25. The district court's order and opinion are reproduced in the Appendix at A126 and A197 respectively and are published at 784 F. Supp. 3d 1.

**C. Related Cases**

This case has not previously been before this Court. Issues related to the removal of officials from different agencies are presented in other cases pending within this Circuit. *See Wilcox v. Trump*, No. 26-5 (U.S.), No. 25-5057 (D.C. Cir.), No. 25-cv-334 (D.D.C.); *U.S. Inst. of Peace v. Jackson*, No. 25-5185 (D.C. Cir.), No. 25-cv-804 (D.D.C.); *Harper v. Bessent*, No. 25-5268 (D.C. Cir.), No. 25-cv-1294 (D.D.C.); *Perlmutter v. Blanche*, No. 25-5285 (D.C. Cir.), No. 25-cv-1659 (D.D.C.); *C.S. Lawn & Landscape, Inc. v. Department of Lab.*, No. 26-5114 (D.C.

Cir.), No. 23-cv-1533 (D.D.C.); *Cook v. Trump*, No. 25-cv-2903 (D.D.C.); *Storch v. Hegseth*, No. 25-cv-415 (D.D.C.); *Cristosal Hum. Rts. v. Marocco*, No. 25-cv-857 (D.D.C.); *Abramowitz v. Lake*, No. 25-cv-887 (D.D.C.); *Pippenger v. U.S. DOGE Serv.*, No. 25-cv-1090 (D.D.C.); *Rural Dev. Innovations Ltd. v. Marocco*, No. 25-cv-1631 (D.D.C.); *Brown v. Trump*, No. 25-cv-1764 (D.D.C.).

/s/ *Adam Jed*
Adam C. Jed
*Attorney, Appellate Staff*
*Civil Division, Room 7243*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-8280*

## TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION AND SUMMARY ............................................................ 1

ARGUMENT ........................................................................................ 1

A. The Statute Does Not Impose A Removal Restriction ......................... 1

B. Grave Constitutional Doubts Confirm The Conclusion ........................ 5

C. The Applicable Mandamus Standard Is Dispositive ............................ 8

CONCLUSION .................................................................................... 10

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Agostini v. Felton*,
521 U.S. 203 (1997) ....................2

*Buckley v. Valeo*,
424 U.S. 1 (1976) ....................8

*Citizens for Resp. & Ethics in Washington v. Trump*,
924 F.3d 602 (D.C. Cir. 2019) ....................9

*Engquist v. Oregon Dep't of Agric.*,
553 U.S. 591 (2008) ....................3

*Illinois v. Ferriero*,
60 F.4th 704 (D.C. Cir. 2023) ....................10

*Leopold v. Manger*,
102 F.4th 491 (D.C. Cir. 2024) ....................9

*Mistretta v. United States*,
488 U.S. 361 (1989) ....................7

*Myers v. United States*,
272 U.S. 52 (1926) ....................2, 3

*Rivers v. Roadway Express, Inc.*,
511 U.S. 298 (1994) ....................2

*Severino v. Biden*,
71 F.4th 1038 (D.C. Cir. 2023) ....................1-2, 3

*Shurtleff v. United States*,
189 U.S. 311 (1903) ....................3

*Trump v. Cook*,
146 S. Ct. 2234 (2026) ....................1, 2, 4, 5, 9, 10

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026) ....................1, 3, 4, 5, 6, 7, 8

**Statutes:**

42 U.S.C. § 2000ee(a) ........................................................................................8

42 U.S.C. § 2000ee(j) ........................................................................................8

**Regulations:**

6 C.F.R. § 1000.5 ............................................................................................8

**Other Authorities:**

PCLOB, *Second Annual Report to Congress March 2007 – January 2008* (Jan. 30, 2008), https://perma.cc/R2TA-4J6J .......................................................6

## GLOSSARY

| | |
|---|---|
| Gov.Br. | Government's Brief for Appellants |
| Gov.Supp.Br. | Government's Supplemental Brief for Appellants |
| PCLOB or Board | U.S. Privacy and Civil Liberties Oversight Board |
| Pl.Br. | Plaintiffs' Brief for Appellees |
| Pl.Supp.Br. | Plaintiffs' Supplemental Brief for Appellees |
| Reply.Br. | Government's Reply Brief |
| SEC | Securities and Exchange Commission |

## INTRODUCTION AND SUMMARY

*Trump v. Cook*, 146 S. Ct. 2234 (2026), and *Trump v. Slaughter*, 146 S. Ct. 2283 (2026), confirm that the Court should not infer that the PCLOB statute contains an unwritten removal restriction. Plaintiffs' theory that the established interpretive rule does not apply to Executive Branch officials who advise others cannot be reconciled with governing precedent and disregards the PCLOB's other powers. And in any event, plaintiffs' statutory arguments lack merit. Plaintiffs' contention that *Slaughter* vitiates any constitutional concerns gets matters exactly backwards. And *Cook* confirms that plaintiffs must also satisfy the high burden for mandamus, which they cannot meet.

## ARGUMENT

### A. The Statute Does Not Impose A Removal Restriction

**1. a.** The Supreme Court has made clear that in the face of congressional silence, removal is incident to appointment, and an official is therefore removable at will. Gov.Br.19-28; Reply.Br.2-9; Gov.Supp.Br.2-9. Plaintiffs posit that when an official does not exercise "executive power," the established rule either disappears or applies in some other form. Pl.Supp.Br.5-9. But plaintiffs identify no case that has stated such a rule. Indeed, *Severino* (which predated *Braidwood*, *Cook*, and *Slaughter*) described the "background presumption that the President may remove *anyone* he appoints," stressed that a statute would have to be "crystal clear" to

overcome that presumption, and applied that presumption to an advisory body. *Severino v. Biden*, 71 F.4th 1038, 1044, 1046 (D.C. Cir. 2023) (emphasis added). Plaintiffs' attempts to rely on *Cook* (Pl.Supp.Br.8-9, 13-14) only underscore the established interpretive rule. *Cook* described that very rule. Gov.Supp.Br.2-3. *Cook* also involved an express "'for cause'" removal restriction. Gov.Supp.Br.6-7. The parties disagreed about the meaning of that provision. But it came "down to the words Congress chose," and the Court interpreted that plain-text restriction. 146 S. Ct. at 2249-2250, 2251-2252.

Whatever the logic of plaintiffs' interpretive theory, the Supreme Court has never placed such a restriction on the governing rule. And once that Court sets out a rule, "it is the duty of other courts to respect that understanding of the governing rule." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312 (1994); *see Agostini v. Felton*, 521 U.S. 203, 237 (1997). This Court need go no further to decide the case.

**b.** Plaintiffs' interpretive theory also makes little sense on its own terms. The strong presumption governing removal is not just a constitutional rule that shields the President's control over those who wield executive power but is also "'a matter of statutory interpretation.'" Gov.Br.20; *see Myers v. United States*, 272 U.S. 52, 119 (1926) (describing "a rule of constitutional *and* statutory construction" (emphasis added)). The President's power to remove his appointees therefore

follows not just from "the grant of executive power to the President" but is also "incident" to his "power of appointment." *Myers*, 272 U.S. at 119; *see Shurtleff v. United States*, 189 U.S. 311, 314-315 (1903) ("[I]n the absence of [a] constitutional or statutory provision, the President can, by virtue of his general power of appointment, remove an officer … ."). Indeed, "given the historical understanding of the nature of government employment," even outside of the federal government, courts have long "recognized the 'settled principle'" that officials can ordinarily be removed "'at the will of the appointing officer.'" *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 606 (2008).

Plaintiffs' position is also hard to square with cases that applied a strong presumption governing removal to inferior officers and line-level employees not appointed by the President, an interstate compact official, and a district court clerk. Gov.Br.20; *see* Gov.Supp.Br.4 (Attorney General opinion about D.C. Register of Wills). And as noted, *Severino* concerned an advisory body. Gov.Br.31; Reply.Br.8.

**c.** Plaintiffs suggest that everything changed with *Slaughter* because the prior statutory decisions were a product of the now-abrogated "*Humphrey's Executor* regime." Pl.Supp.Br.5-7. But plaintiffs' "no part of the executive power" constitutional rule (Pl.Supp.Br.3) is *Slaughter*'s summary of "all that is left of *Humphrey's*." 146 S. Ct. at 2302. Many of the relevant cases pre-date *Humphrey's*.

Gov.Br.19-20. And *Cook* and *Slaughter* referenced the established statutory rule even as *Humphrey's* was being overruled. Gov.Supp.Br.2-3. *Slaughter* also did not "retire[] *Humphrey*'s gradient of 'quasi-legislative' and 'quasi-judicial functions.'" Pl.Supp.Br.3-4. The Court "abandoned" those "long ago." *Slaughter*, 146 S. Ct. at 2302.

Plaintiffs also do not explain how *Slaughter* established some new "bright line" of "executive power" that—under their theory—eviscerates any "constitutional concerns." Pl.Supp.Br.1, 5-7. Plaintiffs acknowledge historically-rooted exceptions like the Federal Reserve. *See* Gov.Supp.Br.8-9. Plaintiffs also do not define "executive power." They think that it does not include advising Executive Branch officials, coordinating Executive Branch functions, or imposing legal obligations on Executive Branch agencies and personnel. Even were plaintiffs correct that shielding the PCLOB from removal is "permissible," that would surely "present Article II concerns." Pl.Supp.Br.7.

**2.** In all events, plaintiffs' statutory arguments lack merit. *Slaughter* and *Cook* show that Congress might choose various tools to insulate officials from outside influence. Gov.Supp.Br.6-10. "[S]taggered terms," "partisan balance," and "independence" from other agencies are examples of "features" that *do not* also establish "removal protections" (Pl.Supp.Br.14). Gov.Br.31, 40-41;

Reply.Br.12-14, 20; Gov.Supp.Br.8-10. *Cook* responded to a list of agencies, including some with these and other features, and confirmed they "*are* removable at will." 146 S. Ct. at 2253 n.5; *see id.* at 2270 n.2 (Thomas, J., dissenting).[1]

Plaintiffs try to revive some of their arguments based on "textual features." Pl.Supp.Br.10-15. The most relevant textual features are that the PCLOB is "appointed by the President" and in "the executive branch." The 2007 statute also significantly revised the prior text without putting a removal restriction into that text. Gov.Br.28-31; Reply.Br.9-11. Plaintiffs' assertedly-textual arguments are also unconvincing for the reasons discussed in the principal briefs. Gov.Br.28-31, 43-45; Reply.Br.12-13, 20-24. For instance, while "'serv[ing] at the pleasure of the President'" means there is no removal restriction (Pl.Supp.Br.10) and at-will removal is a powerful tool for "'general supervision [by] the President'" (Pl.Supp.Br.11-12), the absence of such statutory terms does not create a removal restriction (or indicate what that restriction might be). And when Congress significantly rewrote the statute in 2007, it was sensible not to carry forward this

[1] Justice Gorsuch's observation in *Slaughter* (Pl.Supp.Br.14-15) that some agencies have certain "independence" without "formal statutory removal protections" seems to illustrate that point. 146 S. Ct. at 2314 n.1 (Gorsuch, J., concurring). And that some people have "'tak[en] for granted'" an atextual SEC removal restriction, *id.*, does not mean that assumption is correct, reconcilable with current doctrine, or relevant to the PCLOB. Reply.Br.10.

language. The newly-established six-year terms, for example, meant (among other things) that continuation past six years depended on more than just the President's "pleasure": formal renomination and Senate confirmation.

Also notable is what plaintiffs do not say. Despite asserting what "Congress would have understood" (Pl.Supp.Br.14), plaintiffs offer no evidence that Congress or anyone else understood the statute in that fashion. *See, e.g.*, Gov.Br.45-46; Reply.Br.23-24 (discussing Senate version of the statute). And in fact, during the transition period following the 2007 statute, the Board noted in its annual report to Congress and the President that the new statute "does not limit the President's ability to dismiss members at pleasure." PCLOB, *Second Annual Report to Congress March 2007 – January 2008*, at 31 (Jan. 30, 2008).[2]

### B. Grave Constitutional Doubts Confirm The Conclusion

*Slaughter* also shows that a PCLOB removal restriction would, at a minimum, quite likely be unconstitutional. Gov.Supp.Br.11-16. Most importantly, the PCLOB is in the Executive Branch. In referencing "an agency that 'exercises no part of the executive power'" (Pl.Supp.Br.3), the Court was describing "all that is left of *Humphrey's*" and distinguishing between powers that must be wielded by the Executive Branch and therefore must "fall within the rule of Presidential removal"

[2] https://perma.cc/R2TA-4J6J.

and those that can be assigned to legislative or even private entities that do not. 146 S. Ct. at 2302; *see id.* at 2300-2301, 2305. The Court thus cited Justice Scalia's statement that "*Humphrey's* stands only for the proposition" that the Constitution would permit "'a "*branchless*" agency' that exercises 'no governmental power.'" *Id.* at 2302 (emphasis added) (quoting *Mistretta v. United States*, 488 U.S. 361, 423 (1989) (Scalia, J., dissenting)). The PCLOB is in the Executive Branch and therefore, as *Slaughter* emphasizes, part of the "'hierarchy'" subject to the President's "'superintendence.'" Gov.Supp.Br.12-13.

*Slaughter* confirmed this in the very next sentence when it noted (Pl.Supp.Br.3) that Congress could "establish independent agencies to assist it with its functions" and added (as plaintiffs omit): "But [Congress] may not foist those agencies upon the President." 146 S. Ct. at 2302. To do so would "deprive" the President "of 'the executive power vested [in him].'" *Id.* (alteration in original); *see id.* at 2307 ("[T]he power of removal is part of the executive power[.]"). The PCLOB is not a "[l]egislative branch commission" (Pl.Supp.Br.5). Indeed, it could not be so integrated with executive agencies if it were.

The PCLOB also advises the President and other Executive Branch officials. Gov.Supp.Br.14-15. As plaintiffs note (Pl.Supp.Br.3-4), *Slaughter* suggested that "powers 'of an investigative and informative nature,' … may 'be regarded as merely

in aid of the legislative function of Congress.'" 146 S. Ct. at 2305 (quoting *Buckley v. Valeo*, 424 U.S. 1, 137-138 (1976)). Not only does that show—contrary to plaintiffs' contention—that investigative and advisory functions are "powers," *id.*, but the PCLOB's role is not "merely in aid" of Congress's "legislative function." *Id.*; *see also id.* at 2300, 2302 (confirming that the Court "long ago abandoned" the idea of "*partly* executive").

Plaintiffs also disregard the PCLOB's other powers. The Board runs a freestanding Executive Branch "agency" with an Executive Director, General Counsel, staff, and multi-million dollar budget. *See* 42 U.S.C. § 2000ee(a), (j); 6 C.F.R. § 1000.5. The PCLOB also wields formal power over other agencies. Gov.Br.33-34, 37; Gov.Supp.Br.15-16. The President is "free to ignore" the PCLOB's advice. Pl.Supp.Br.5. But agencies are not free to ignore the PCLOB's designations for coverage under a related statute or the PCLOB's commands to turn over certain records or make personnel submit to interviews. And while the PCLOB cannot issue subpoenas by itself (Pl.Supp.Br.5), it can authorize the Attorney General to do so.

### C. The Applicable Mandamus Standard Is Dispositive

**1.** The district court erred by exercising its equitable powers. Gov.Supp.Br.17. Plaintiffs misunderstand (Pl.Supp.Br.16) *Cook*'s reference to

"protect[ing] the possession of officers *de facto*." 146 S. Ct. at 2250. That historical practice protected "*de facto* officers," *i.e.*, officers who were in "possession" of an office and "exercis[ing] [its] functions," and could occur only "'pending a litigation' at law." *Id.*

Plaintiffs similarly misunderstand (Pl.Supp.Br.16) *Cook*'s reference to "'adequacy of legal remedies.'" 146 S. Ct. at 2250. "[E]quity has no jurisdiction" over actual "appointment and removal." *Id.* That must occur through "law" (*e.g.*, mandamus). *Id.* But "immediate" "interim" relief, *Cook* explained, is another matter. *Id.* Just because plaintiffs cannot meet the mandamus burden does not mean that mandamus is "unavailable." Pl.Supp.Br.17-18.

**2.** Mandamus cannot be used to settle "[d]ebatable questions." Pl.Supp.Br.17 (alteration in original) (quoting Gov.Br.52-53); *see* Gov.Supp.Br.17-18. Plaintiffs urge that removal restrictions can establish the sort of "duty amenable to mandamus." Pl.Supp.Br.17. But even if there is such a "ministerial duty," plaintiffs must also show that their "right to issuance of the writ is clear and indisputable." *Leopold v. Manger*, 102 F.4th 491, 497 (D.C. Cir. 2024); *see Citizens for Resp. & Ethics in Washington v. Trump*, 924 F.3d 602, 606 (D.C. Cir. 2019) (listing these distinct "threshold requirements").

This does not "turn for-cause protection" into "at-will employment." Pl.Supp.Br.15 (quoting *Cook*, 146 S. Ct. at 2256). Where a court is exercising "mandamus jurisdiction," it must be "clear and indisputable" that there is a removal protection in the first place. *Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023). It is one thing when a statute expressly limits removal, such as providing a "for-cause protection." But when a removal restriction is "not *clearly mandated* by statutory authority or case law," a court cannot exercise its mandamus authority to make that determination and issue relief. *Id.* (emphasis added).

**CONCLUSION**

The judgment of the district court should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
*/s/ Adam Jed*
ADAM C. JED
*Attorneys, Appellate Staff*
*Civil Division, Room 7243*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-8280*

SEPTEMBER 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's supplemental briefing order of August 5, 2026, because it contains 1,999 words according to the count of Microsoft Word. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 365 in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ Adam Jed*
ADAM C. JED