**[ORAL ARGUMENT NOT YET SCHEDULED]**

No. 25-5197

# In the United States Court of Appeals for the District of Columbia Circuit

TRAVIS LEBLANC and EDWARD FELTEN,

*Appellees*,

*v.*

UNITED STATES PRIVACY AND CIVIL LIBERTIES OVERSIGHT BOARD, et al.,

*Appellants*.

On Appeal from the U.S. District Court
for the District of Columbia, No. 1:25-cv-00542-RBW
(Hon. Reggie B. Walton)

**SUPPLEMENTAL REPLY BRIEF FOR APPELLEES**

Caleb Thompson
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th St.
New York, NY 10019
(212) 836-8000
Caleb.Thompson@arnoldporter.com

Elisabeth S. Theodore
Daniel R. Yablon
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
Elisabeth.Theodore@arnoldporter.com
Daniel.Yablon@arnoldporter.com

*Counsel for Appellees Travis LeBlanc and Edward Felten*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i
TABLE OF AUTHORITIES ........ ii
GLOSSARY ........ iv
INTRODUCTION ........ 1
ARGUMENT ........ 2
I. Appellees Were Unlawfully Removed ........ 2
A. The PCLOB's Removal Protections Are Constitutional ........ 2
B. No Clear Statement Rule Is Required, but the PCLOB Statute Satisfies One ........ 4
II. Appellees Were Entitled to Reinstatement ........ 8
CONCLUSION ........ 10
CERTIFICATE OF COMPLIANCE ........ 11
CERTIFICATE OF SERVICE ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Collins v. Yellen*,
594 U.S. 220 (2021)....5

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
485 U.S. 271 (1988)....9

*Humphrey's Executor v. United States*,
295 U.S. 602 (1935)....2, 4

*Kennedy v. Braidwood Mgmt., Inc.*,
606 U.S. 748 (2025)....5

*Shurtleff v. United States*,
189 U.S. 311 (1903)....5

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996)....9

*Trump v. Cook*,
146 S. Ct. 2234 (2026)....1, 4, 5, 6, 7, 8, 9, 10

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026)....1, 2, 3, 4, 5, 6, 7

*Wiener v. United States*,
357 U.S. 349 (1958)....6

**Statutes**

5 U.S.C. § 403(a)....8

42 U.S.C. § 2000ee....3

D.C. Code § 16-3501....8

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ........................................................................ 8

## GLOSSARY

| | |
|---|---|
| FTC | Federal Trade Commission |
| PCLOB | Privacy and Civil Liberties Oversight Board |

## INTRODUCTION

*Slaughter* establishes a bright-line constitutional rule: the President's removal authority extends only to subordinates who execute the law. The government does not—and cannot—argue that the PCLOB executes anything. Having no answer to *Slaughter*'s core holding, the government advances a "location" test that *Slaughter* itself rejected.

*Cook* is equally fatal to the government's position. *Cook* rejected the government's demand for a magic-words or clear statement test, holding that removal protections may be inferred from statutory context, history, and purpose. Here, Congress did not leave its intent to implication: it affirmatively deleted the text providing that PCLOB members "serve at the pleasure of the President," declared the Board "independent," and removed it from the President's "general supervision." To adopt the government's position is to treat those deliberate amendments as idle gestures—a result no canon of statutory interpretation permits and *Cook* forbids.

Finally, *Cook* repudiates the government's "right-without-a-remedy" theory, confirming that courts possess ample authority to reinstate wrongfully removed officers. Whether achieved through injunction or mandamus, *Cook* makes clear that officials who are legally entitled to their office may not be stripped of it and left without a judicial remedy.

## ARGUMENT

### I. Appellees Were Unlawfully Removed

#### A. The PCLOB's Removal Protections Are Constitutional

*Slaughter* held that the Constitution permits restrictions on removal whenever an agency or official exercises no "executive power." *Trump v. Slaughter*, 146 S. Ct. 2283, 2302-03 (2026); *id.* at 2305 ("The FTC unquestionably exercises executive power, and must therefore be controlled by the Chief Executive, in whom such power is vested."). The government concedes what *Slaughter* makes dispositive: the PCLOB has no Article II power to execute the law. *See* U.S.Supp.Br.11-16 (never arguing otherwise). That ends the constitutional avoidance inquiry.

The government argues that constitutional doubt remains because the statute describes the PCLOB as "[with]in the executive branch." U.S.Supp.Br.13. But *Slaughter* forecloses the argument that location controls. *Humphrey*'s observed that the Constitution permitted removal protections for an "officer who occupies no place in the executive department and who exercises no part of the executive power vested by the Constitution in the President." *Humphrey's Executor v. United States*, 295 U.S. 602, 628 (1935). *Slaughter* held that "all that is left of *Humphrey's* is its observation that an agency that 'exercises no part of the executive power' need not fall within the rule of Presidential removal." 146 S. Ct. at 2302.

*Slaughter* thus preserved the "power" half of *Humphrey's* two-part test and

dropped the locational half ("no place in the executive department"). To bolster its location argument, the government selectively quotes only the first half of *Slaughter*'s observation that Congress "may not foist [independent] agencies upon the President, and thus deprive him of 'the executive power vested [in him] by the Constitution.'" *Slaughter*, 146 S. Ct. at 2302; *see* U.S.Supp.Br.13. But the full sentence confirms that the constitutional violation lies in *depriving* the President of executive power. Because the PCLOB exercises none, its statutory independence deprives the President of nothing.

The government also repeats arguments from prior briefs. But an official does not deprive the President of his "power" by providing nonbinding *advice*, even on national security. The government's invocations of classified information and interagency coordination are red herrings. Access to classified information is not the power to execute the law; congressional committees, congressional staff, Article III judges, defense counsel, and private-sector personnel routinely handle classified information without being subject to presidential removal. Nor does the PCLOB exercise "administrative control" over other agencies. Even if the PCLOB could request that an agency designate a privacy officer, the PCLOB cannot mandate it, *see* 42 U.S.C. § 2000ee (providing no such authority), and that minor coordinating task is not an exercise of power. *See Slaughter*, 146 S. Ct. at 2291 (FTC executed the law because it "enforces … rules against private parties"); *id.* at 2301 (agencies

exercise executive power when they "regulate private conduct"); *id.* at 2302 (same).

The government argues that "officials with 'purely executive functions'" must be removable, U.S.Supp.Br.14, but *Slaughter* used that term because it was quoting a concession from plaintiff's counsel—not because it was retreating from the opinion's core holding. 146 S. Ct. at 2306. *Slaughter*'s core holding was to jettison *Humphrey's* ambiguous inquiry into "quasi-legislative" functions and replace it with a simple question: does the official exercise the President's Article II power to execute the law?[1]

### B. No Clear Statement Rule Is Required, but the PCLOB Statute Satisfies One

1. *Slaughter* and *Cook* do not "confirm" a clear statement rule, U.S.Supp.Br.2; they reject one. The government cites a footnote in *Cook* that describes possible forms of removal protection but says nothing about a clear statement rule. *Trump v. Cook*, 146 S. Ct. 2234, 2253 n.5 (2026). Meanwhile, the government ignores the opinion's holding. A principal dispute between the Court and the dissent was whether a clear statement rule applied, and the Court answered "no" in the face of the same arguments the government invokes here. Appellees.Supp.Br.8-9; *see Cook*, 146 S. Ct. at 2269-72 (dissent). It squarely rejected the view that because "Congress knows how to impose" such requirements

[1] Regardless, the PCLOB does not exercise purely executive functions. Appellees.Br.42-48.

"expressly," the Court should ignore all interpretive tools outside the statute's "plain language." *Id.* at 2252 (citations omitted).

*Cook* concerned notice-and-hearing requirements, but that is no distinction: those requirements likewise constrain the President's removal authority. No ground exists to require a clear statement to install "for cause" protections but not "notice-and-hearing" protections. *Cook* rejected a clear statement rule because the Federal Reserve is an agency where, like here, removal restrictions do not offend the President's Article II powers—unlike in *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748 (2025), *Collins v. Yellen*, 594 U.S. 220 (2021), and *Shurtleff v. United States*, 189 U.S. 311 (1903). Appellees.Supp.Br.6-7. The Court's rejection of the government's *Braidwood* argument in *Cook* compels rejection of the same argument here.

*Slaughter* does not support the government either. *Contra* U.S.Supp.Br.3. *Slaughter* explained that Revolutionary War Debt Commission officials were removable because the statute did not explicitly *or* implicitly confer a removal protection. 146 S. Ct. at 2308 & n.7. The Court rejected the dissent's inference from the word "independent" not because inference was methodologically improper or because independence carries no importance, but because the Commissioners were merely "'distinct and Independ[e]nt' from '[t]he *Treasury*'—not the President." *Id.* at 2308 n.7. The PCLOB was already independent of other departments, and

Congress's 2007 amendments establishing it as an "independent agency" and removing it from the President's "general supervision" necessarily conferred independence *from the President.*

Nor did *Slaughter* overrule (or even discuss) the approach to statutory interpretation adopted in *Wiener v. United States*, 357 U.S. 349 (1958). *Contra* U.S.Supp.Br.5. Indeed, the government's argument for discarding *Wiener*'s structure-and-function test for statutory interpretation relies almost exclusively on cases that pre-date *Severino* and provide no basis to depart from settled circuit law. U.S.Supp.Br.5.

The government points to *Slaughter*'s references to the President's presumptive removal power (U.S.Supp.Br.3-4), but all concern officials who exercised executive power. Regardless, a presumptive removal power would not require a clear statement or magic words—it would just mean that removal is permitted if ordinary interpretive tools don't resolve the question. Here, they do.

2. Even a clear statement rule is satisfied. Congress deleted the clause stating that members "shall serve at the pleasure of the President," deleted the provision placing the Board under the "general supervision of the President," and reconstituted the PCLOB as an "independent agency" with fixed, staggered terms and partisan-balance constraints. Appellees.Br.24-25, 28-48; Appellees.Supp.Br.10-15. Deletion of such "language is presumed to entail a

change in meaning." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 256-60 (2012). Under *Cook*, removal "at pleasure" and tenure protections are polar opposites. 146 S. Ct. at 2245, 2253 n.5.

The government's supplemental brief principally focuses on whether an inference may be drawn from the word "independent," ignoring the many ways in which *Cook* and *Slaughter* reinforce that *other* textual clues signal removal protections. Appellees.Supp.Br.10-15. But *Cook* and *Slaughter* support appellees' independence argument, too. Although appellees have never suggested that the word "independent" alone would suffice, *contra* U.S.Supp.Br.8-9, *Cook* relied on the Fed's independence to support its decision to *infer* a removal protection that was not explicit in the text. Appellees.Supp.Br.12-13; *see also supra* pp.4-5.

Accordingly, it is not just "plaintiffs' view" that courts should rely on the structure and duties of an office to inform the question of whether a statute confers removal protections. *Contra* U.S.Supp.Br.8. It is this Court's view in *Severino* and the Supreme Court's view in *Cook*. *See* U.S.Supp.Br.13-14. The government finally contends that *Slaughter* "re[i]nforces" the notion that "advice" is consistent with removal. U.S.Supp.Br.9. But its principal support is an irrelevant quotation about "forc[ing]" the postmaster general upon the President. *Id.* Regardless, appellees have never argued that an advice function alone requires removal protections, but instead that the PCLOB's unique oversight role, numerous textual features, and

statutory history are incompatible with removal at will. Inspectors general are readily distinguishable: by statute, they are "under the general supervision of the [agency] head." 5 U.S.C. § 403(a).

## II. Appellees Were Entitled to Reinstatement

*Cook*'s remedial holding stands for a simple proposition: courts may order a wrongfully removed officer's reinstatement. The government's position—that outside the "most extreme circumstances," U.S.Supp.Br.18, no remedy is available, "even if the President fires a member of the Board for an absurd reason, or no reason, and even if the court holds that he broke the law in doing so," *Cook*, 146 S. Ct. at 2250—is foreclosed by *Cook*.

First, the government seeks to evade *Cook* by asserting that equity may protect an officer only on an interim basis, but not on final judgment. U.S.Supp.Br.17. That argument misreads both *Cook* and equitable tradition. As *Cook* explained, equity's "historical[]" reluctance to settle title to an office "reflect[s] equity's overriding concern about the adequacy of legal remedies." 146 S. Ct. at 2250 (quotation marks omitted). Where a plaintiff lacks "effective legal remedies (like mandamus and *quo warranto*)," equity should "intervene." *Id.* (quotation marks omitted). The injunction the district court entered fell well within its discretion under *Cook*.

There is no dispute that the applicable *quo warranto* statute authorizes suit only to *remove* a wrongful officeholder and provides no remedy for those like

appellees who were unlawfully removed without replacement. D.C. Code § 16-3501; U.S.Supp.Br.18. And if the government is right that mandamus is unavailable here, equity allows injunctive relief absent any effective legal remedy. The government's contrary position rests on the historical division of jurisdiction between *different courts* that has "lost all connection with the reality of the federal courts' procedural system" after "the merger of law and equity, which was accomplished by the Federal Rules of Civil Procedure." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 283 (1988). The district court undisputedly had jurisdiction. A court's authority to enter injunctive relief on final judgment with a fully developed record is surely at least as broad as its power to issue interim relief on a heightened standard, where the requirements for equitable relief are otherwise met.

Second, the government's characterization of the mandamus standard conflicts with both *Cook* and this Court's precedent. In *Swan v. Clinton*, this Court held that a duty to reinstate a wrongfully removed officer "is ministerial and not discretionary." 100 F.3d 973, 977 (D.C. Cir. 1996). Mandamus lies "even where the interpretation of the controlling statute is in doubt, provided that the statute, once interpreted, creates a peremptory obligation for the officer to act." *Id.* at 978 (internal quotations omitted). *Cook* is in accord. The Court held that Cook was likely to prevail on her claims for reinstatement (including claims that the Federal

Reserve statute implied certain procedural protections) notwithstanding weighty questions that divided the Court itself. *See Cook*, 146 S. Ct. at 2250-51. Even if the PCLOB statute were ambiguous—and it is not—the district court correctly determined that mandamus should issue if injunctive relief was unavailable.

## CONCLUSION

The Court should affirm.

Dated: September 11, 2026

Respectfully submitted,

*/s/ Elisabeth S. Theodore*

Elisabeth S. Theodore
Daniel R. Yablon
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
Elisabeth.Theodore@arnoldporter.com
Daniel.Yablon@arnoldporter.com

Caleb Thompson
ARNOLD & PORTER
KAYE SCHOLER LLP
250 West 55th St.
New York, NY 10019
(212) 836-8000
Caleb.Thompson@arnoldporter.com

*Counsel for Appellees Travis LeBlanc and Edward Felten*

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to this Court's supplemental briefing order, that the foregoing brief contains 2,000 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). I further certify that the document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Times New Roman font.

Dated: September 11, 2026

Respectfully submitted,

*/s/ Elisabeth S. Theodore*
Elisabeth S. Theodore

*Counsel for Appellees Travis LeBlanc and Edward Felten*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2026, I caused the foregoing document to be electronically filed using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Respectfully submitted,

*/s/ Elisabeth S. Theodore*
Elisabeth S. Theodore

*Counsel for Appellees Travis LeBlanc and Edward Felten*